Loring-, J.,
delivered the opinion of the court:
The petitioner in this case claims—
1st..For the delays to which he was subjected in waiting for an escort the amount stipulated in the contract of $10 per day for each team of his train.
2d. For the loss of his oxen and a mule captured and killed by the Indians.
It was objected by the defendants that the contract was void,, because not according to the statute of 1861 or that of 1864. We think the contract was not affected by the latter statute and was authorized by the former, for it was for supplies required for a military post in an exigency which did not admit of the delay of advertising for proposals.
The contract provided as follows: “ For delays of trains caused by waiting an escort after application James B. Porter shall be entitled to $10 per day for each team,” &c.
And the facts find that the petitioner applied to General *365 Palmer, commanding at Fort Laramie, by letter, on the 25tb February, as follows:
“ General : I would respectfully request that an escort may be in readiness by the 28th instant, of such numbers as in your judgment you may deem sufficient, to accompany and protect a train of ñfty-two wagons, one hundred and twenty mules, four hundred and eight oxen, and fifty-nine men, from this post to Fort Phil Kearney,-loaded with'forage, under a contract with General William Myers, chief quartermaster.”
A majority of the court are of opinion that the application thus made was explicit and full, and all that was required of the petitioner. It gave three days’ notice to General Palmer, •and stated the number of wagons, cattle, and men, the destination of the train, and its character and object. And that an •escort was then absolutely necessary is made certain by the •state of the country at the time, which was known to General Palmer, and by the experiences of this train and others on the route, as shown in the evidence. And the applications subsequently made to General Palmer by the petitioner, by telegram, letter, and messenger, when the train wras surrounded by and fighting with the Indians, and thus actually subjected to the peril against which the escort was intended as a defense, was •equally clear and explicit, and made more imperious by circumstances.
And we think the failure of the United States to furnish an •escort, as shown in the statement of facts, was equivalent to ■and in effect a refusal to do so and a breach of the contract, ■entitling the petitioner to the indemnity stipulated for in the ■contract for the delays found by the court on the evidence.
The petitioner claimed to be indemnified for his oxen and a mule captured and destroyed by the Indians, and rested his ■claim on two grounds :
First, on the Act 3d March,-1849, (9 Stat. L., p. 415,) providing indemnity for horses and cattle killed or lost in the service of the United States.
The learned counsel for the petitioner admitted that this court had decided, in the like case of Adolph Gutman, that the statute cited was not applicable. And we are of that opinion now, for we think that the statute applies to cases in which the United States have by impressment or contract taken the property specified into their possession and custody, and out of the pos *366 session and protection of its owner. And in transportation-contracts that is not the case' and was not the case here, for the petitioner retained the possession of his teams and was using them to perform his own contract, and they were thus in his. service, and not in the service of the United States, who were at the most only the other parties of the contract, in which the transportation was to be done by him.
The other ground of the petitioner’s claim was that the loss, of his osen and mule was the direct consequence of the defendants’ breach of contract in not furnishing an escort.
To this it was objected on the part of the defendants that the contract assured an indemnity for all delays to which he might be wrongfully subjected in the price stipulated for such delays, and that being thus secured against loss he was not obliged to start without an escort, and was not required to do so by any officer of the Government, and in doing so he acted at his own election, and therefore at his own risk. And a majority of the court are of this opinion. In that I do not concur, for I do not think that the petitioner was obliged to devote his life to the performance of this one contract, because of its breach by the United States, and therefore to abandon his home and all his other worldly concerns, and keep himself and his employés and his teams in the starving and barbarous region of Fort Laramie forever. And that, as the contract fixes no limits for delays, the law fixes a reasonable time as the limit; and that the waiting at Fort Laramie for over a month, as shown by the facts stated, was a fully reasonable time, and that at its expiration the petitioner had a right to proceed in his contract for trans- • portation and earn its price, and leave the United States to the consequences of their failure to perform their part of the contract ; and I think that the petitioners’ loss of his oxen and mule was a direct consequence of the Government’s breach of the contract in their failure to furnish an escort in the circum stances shown in the statement of facts, and that the United States are liable therefor.